UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

The Elizabeth Condominium Association,
Inc. *et al.*,

       *Plaintiffs*,

         *v.*

Montgomery County, Maryland,

       *Defendant*.

Case No. 8:25-cv-01019-DLB

**BRIEF OF *AMICUS CURIAE* PUBLIC HEALTH LAW CENTER, INC. IN SUPPORT OF
MONTGOMERY COUNTY, MARYLAND'S MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Jill E. Grant
Jill Grant & Associates, LLC
1319 F Street NW, Suite 300
Washington, DC 20004
jgrant@jillgrantlaw.com
(202) 821-1950

Daniel Carpenter-Gold
Mia Montoya Hammersley
Public Health Law Center
Mitchell Hamline School of Law
875 Summit Ave.
St. Paul, MN 55105
daniel.carpentergold@mitchellhamline.edu
(651) 290-7506

*Counsel for the Public Health Law Center*

# Table of Contents

Interest and Identity of Amicus ................................................................................................... 1

Summary of the Argument .......................................................................................................... 1

Argument ..................................................................................................................................... 2

   I.   EPCA's Preemption Provision does Not Apply to the BEPS ............................................. 2

     A.   The BEPS are Highly Flexible Rules Encouraging Reductions in the Energy Use Intensity of Buildings ........................................................................................................ 2

     B.   The BEPS do Not "Concern" the Energy Efficiency or Energy Use of Any Appliance 3

   II.   EPCA's Legislative History Indicates that Congress did Not Intend EPCA to Preempt Regulations Like the BEPS ....................................................................................................... 6

     A.   The BEPS do Not Raise the Concerns with which Congress was Concerned in Enacting EPCA's Preemption Language .............................................................................. 7

     B.   The Legislative Record Confirms that Congress Intended to Preempt Only Appliance Standards ............................................................................................................................... 9

   III.   Extending EPCA Preemption to Cover the Building Energy Performance Standards would Eliminate Core State and Local Authorities ................................................................... 10

     A.   Extending the Berkeley Reasoning Would Threaten Important County Health and Safety Standards .................................................................................................................. 10

     B.   Plaintiffs' Logic Goes beyond Berkeley, Threatening Other Regulatory Authorities .. 13

Conclusion ................................................................................................................................. 15

**Interest and Identity of Amicus**

The Public Health Law Center (Center) is a public interest legal resource center dedicated to improving health through the power of law and policy. The Center helps local, state, national, Tribal, and global leaders promote health by strengthening public policies. These policies include regulations, such as those challenged in this case, that reduce the indoor and outdoor pollution caused by fossil-fuel combustion and mitigate climate change, which is among the greatest public-health threats today. The Center previously filed an *amicus curiae* brief in *Maryland Building Industry Association v. McIlwain*, No. 25-cv-113 (D. Md. May 13, 2025), Dkt. No. 52, addressing similar issues; this brief focuses on material that is specific to the Montgomery County regulation challenged in this case.

**Summary of the Argument**

Montgomery County's Building Energy Performance Standards (BEPS) do not regulate the energy efficiency or energy use of appliances. *See generally* Montgomery Cnty. Code §§ 18A-38 to -43B; Code of Montgomery Cnty. Regs. (COMCOR) §§ 18A.43A.01.01-.15. Rather, the BEPS set targets for buildings' net energy-use intensity (EUI): the amount of energy used by the building, minus the renewable energy generated there, compared to the building's size. COMCOR §§ 18A.43A.01.04, .09. The BEPS also include a number of other flexibility mechanisms and guarantee that no building will be required to reduce its EUI by more than 30 percent. *Id.* § 18A.43A.01.06. They do not require energy-use reductions from any particular appliance—indeed, if a building adds sufficient onsite renewable generation, they do not require any energy-use reductions from the building. Because the BEPS do not mandate any changes to any appliance, they do not "concern[] the energy efficiency[ or] energy use" of appliances covered by the Energy Policy and Conservation Act (EPCA) and therefore are not preempted by

1

that Act. 42 U.S.C. § 6297(b), (c); *see also id.* § 6316 (preemption of industrial appliances).

In addition to stretching EPCA preemption beyond the statutory text, Plaintiffs' interpretation goes beyond Congress's intent in enacting the relevant statutory language. This is evident both from the legislative history of EPCA and from the absurd results of Plaintiffs' proposed reading. First, Plaintiffs' interpretation of EPCA would preempt any regulation that could prevent an EPCA-covered appliance from being used in a building. *E.g.*, Compl., ECF No. 1, ¶ 36. Such preemption could effectively bar a wide variety of basic code measures that Montgomery County (the County) has adopted to prevent the use of appliances in unsafe places. Second, Plaintiffs' logic would preempt any regulation of a broader condition to which the use of an EPCA-covered appliance might contribute. *Id.* This interpretation would threaten still more County health, safety, and land-use regulations—from the maximum load that may be connected to an electrical circuit to the amount of light a building can emit—that are at the core of traditional state and local authority. Congress could not have intended this result, and therefore the Center urges the Court to reject Plaintiffs' EPCA interpretation and grant the County's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, ECF No. 20.

## Argument

### I.    EPCA's Preemption Provision does Not Apply to the BEPS

####   A. *The BEPS are Highly Flexible Rules Encouraging Reductions in the Energy Use Intensity of Buildings*

The BEPS regulate the net EUI of certain large buildings, not the energy use of appliances. As described by the County, the BEPS are standards for a building's net EUI: the energy used by the building, minus the amount of renewable energy generated at the building, divided by the building's gross square footage. *See generally* County's Mem. L. Supp. Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J. (County Mem.) 9-10 (citing COMCOR

§§ 18A.43A.01.01-.16). These standards will never require a building to reduce its net EUI by more than 30 percent below its "performance baseline," which is a representative average of the building's energy usage in the years leading up to the BEPS, or in the case of new buildings, the first few years of service. Montgomery Cnty. Code § 18A-42(c); COMCOR § 18A.43A.01.06(C). The BEPS also include a variety of options for reducing or delaying a building's net EUI standard, or even replacing the standard entirely with a schedule of owner-selected energy-reduction measures called a "building performance improvement plan." County Mem. 9-10 (citing COMCOR §§ 18A.43A.01.12-.13).

Thus, while the BEPS are designed to reduce building energy use, they include a wide variety of alternative compliance options. An owner may reduce a building's energy use through a variety of means, such as improving the building's envelope to reduce heating and cooling needs, adjusting operating parameters of existing equipment, or changing building policies to avoid wasting energy. A building with a building performance improvement plan may never have to meet any numerical target under the BEPS. COMCOR § 18A.43A.01.14. Buildings that struggle with their net EUI targets can receive extensions to their compliance deadlines or adjustments to their targets that will enable the building to remain in compliance with the BEPS. *Id.* § 18A.43A.01.15. And a building can comply with the net EUI targets without reducing its energy use at all: if a building owner adds sufficient onsite renewable generation—at most 30 percent of its pre-BEPS energy use—the building will meet its net EUI target without any other changes. COMCOR §§ 18A.43A.01.06(C), .09.

B.  *The BEPS do Not "Concern" the Energy Efficiency or Energy Use of Any Appliance*

Plaintiffs assert that the BEPS "'concern[] the energy efficiency[ and] energy use of…gas appliances'" by "restricting and penalizing the consumption of certain quantities of gas energy

3

by covered gas appliances and regulating those appliances' energy efficiency." Compl. ¶ 66

(quoting 42 U.S.C. § 6297(c)). However, the BEPS do not "restrict[]" or "penaliz[e]…the

consumption" of gas by any appliance; in fact, they do not say anything about the gas

consumption or the overall energy consumption of any appliance. Neither do they "regulat[e]

those appliances' energy efficiency," since they do not address the efficiency of any appliance.

Indeed, the BEPS do not impose any requirements on any appliances at all.[1] Notably, BEPS

standards can be met by installing onsite generation, reducing energy consumption, a

combination of the two, or by meeting the requirements for a building performance improvement

plan or other adjustment. *See generally* COMCOR §§ 18A.43A.01.09-.15. In fact, a building

could meet the BEPS without making any change to its energy consumption at all, by adding

onsite generation. *Id.* § 18A.43A.01.09.

      Regardless, restricting the energy use of a building does not "concern" the energy

efficiency or use of an appliance that might be used inside that building. The Southern District of

New York recently interpreted the term "concerning" in the context of this EPCA provision.

*Ass'n of Contracting Plumbers v. City of New York*, No. 23-cv-11292, 2025 WL 843619, at *5-7

(S.D.N.Y. Mar. 18, 2025), *appeal docketed*, No. 25-922 (2nd Cir. filed Apr. 21, 2025). The court

noted that "concerning" can have a similar meaning to "relating to" or "with respect to," with

---

[1] Plaintiffs imply that the BEPS' building performance improvement plan option regulates
EPCA-covered appliances because such plans could include retrofitting buildings with new
equipment. Compl. ¶¶ 32-36. This is inaccurate, as the County explains. County Mem. 10 n.33.
Even if it were correct, it would be insufficient for Plaintiffs' case: EPCA does not preempt
regulations "as a whole." *Cal. Restaurant Ass'n. v. City of Berkeley*, 89 F.4th 1094, 1104 n.7 (9th
Cir. 2024). Rather, EPCA prevents regulations that "concern[]" a product's energy use from
becoming "effective with respect to such product." 42 U.S.C. § 6297(c). Thus, if a building
performance improvement plan did improperly regulate an appliance under EPCA, it would
render the plan ineffective as to that appliance, not invalidate the BEPS.

"relating to" having a broader and "with respect to" having a narrower meaning. *Id.* at *5 (collecting cases). But even the more capacious "relating to" has limits. *Id.* at *6 (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)). Under Supreme Court precedent, a regulation "relates to" a subject if it has a "connection with" or "reference to" that subject. *Id.* (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Where a law does not "'focus[ ] on' the performance standards applicable to covered products" or "draw any distinction between products based on their energy efficiency or energy use as manufactured," it cannot be said to "have a connection with EPCA's subject matter." *Id.* (quoting *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008)).

The BEPS, like the regulation reviewed in *Association of Contracting Plumbers*, do not "relate to" or "concern" the energy use or energy efficiency of EPCA-covered appliances. The BEPS' EUI standards do not "reference" EPCA-covered appliances or their energy efficiency or use, either explicitly or by proxy, except to the extent that the owner requests a building performance improvement plan that includes them. By the same token, they do not "focus[ ] on" appliance efficiency: using higher-efficiency EPCA-covered appliances is only one of many means to comply with the BEPS. And the BEPS do not "draw any distinction between" EPCA-covered products at all, since the regulations do not address the use of such products. Thus, the plain text of EPCA's preemption provision does not include regulations like the BEPS.

*California Restaurant Association v. City of Berkeley* also addressed the question of when a regulation "concern[s]" an appliance's "energy use." 89 F.4th 1094, 1101 (9th Cir. 2024). However, that opinion's discussion and reasoning are limited to "'*building code[s] for new construction*'" that "prohibit[]" the use of EPCA-covered appliances or the infrastructure they require. *Id.* at 1101-02 (quoting 42 U.S.C. § 6297(f)). The BEPS are neither building codes

for new construction nor prohibitions on the use of any appliance, and *Berkeley* therefore does not apply. County Mem. 23-24; *see also, e.g.*, *Berkeley*, 89 F.4th at 1106 (opinion's "holding is very narrow"); Order at 9, *Rinnai Am. Corp. v. S. Coast Air Mgmt. Dist.*, No. 24-cv-10482 (C.D. Cal. July 18, 2025). Dkt. No. 79 (finding *Berkeley* inapplicable to regulation that "is not a building code, and…does not prohibit or regulate the quantity of natural gas used by appliances"). Even if *Berkeley* did apply, it would not change the application of "concerning" in this case, since the Ninth Circuit's interpretation of the term is roughly in line with *Association of Contracting Plumbers*: it notes the broad meaning of the term while also acknowledging a limit to its scope. *See, e.g.*, 89 F.4th at 1103 ("[A] regulation may 'concern' something without directly regulating that thing…. Yet, the breadth of EPCA's preemption provision 'does not mean the sky is the limit.'" (quoting *Dan's City Used Cars*, 569 U.S. at 260)).

## II. EPCA's Legislative History Indicates that Congress did Not Intend EPCA to Preempt Regulations Like the BEPS

The plain-text reading of EPCA is supported by the statute's legislative history. The statutory language at issue in this case originates in the National Appliance Energy Conservation Act of 1987 (NAECA). Pub. L. 100-12, § 7, 101 Stat. 103, 118. Congress intended these provisions to solve a specific problem: disparate efficiency standards that applied to the same appliances, driving up costs for appliance manufacturers. *E.g.*, H.R. Rep. No. 100-11, at 24 (1987) ("[42 U.S.C. § 6927] is designed to protect the appliance industry from having to comply with a patchwork of numerous conflicting State requirements."). But this is not a concern with the BEPS: they are not appliance standards and they pose no risk of creating the sort of conflict for appliance manufacturers with which Congress was concerned. In this sense, the BEPS are similar to the California rule recently upheld by the Central District of California against a nearly

6

identical challenge: they "do[] not implicate any of the issues the EPCA was intended to address—[they] do[] not create an inconsistent state efficiency standard, require that consumers use appliances with a higher efficiency standard or force manufacturers to meet standards different than those set by the [Department of Energy]." Order at 9, *Rinnai America Corp.*, No. 24-cv-10482. It is therefore clear that NAECA, and by extension, EPCA, is not intended to preempt regulations like the BEPS.

A.   *The BEPS do Not Raise the Concerns with which Congress was Concerned in Enacting EPCA's Preemption Language*

NAECA was the product of a unique confluence of events in the early 1980s. An earlier version of EPCA tasked the U.S. Department of Energy (DOE) with promulgating federal appliance efficiency standards, but the agency refused to do so in several important areas. S. Rep. No. 100-6, at 3-4 (1987). At the same time, a large number of state governments, supported by the DOE, began issuing their own appliance standards, many of which conflicted with each other. *Id.* at 4. Appliance manufacturers, seeking uniform appliance standards, and the Natural Resources Defense Council, who wanted to ensure the creation of federal appliance standards, negotiated language for a comprehensive EPCA overhaul that would achieve both those goals. *Id.* This language was introduced in Congress in 1986, pocket vetoed once by President Reagan, *id.*, and then passed in 1987.

NAECA's preemption language therefore has a very specific purpose: to protect "the appliance manufacturing industry" from "the burdens of a patchwork of conflicting and unpredictable State regulations." *Id.* at 12. The "burdens" that resulted from these conflicting regulations, as laid out by the appliance manufacturers involved in negotiating the bill, consisted of three specific impacts: First, conflicting appliance standards would lead to a "fra[g]mentation

7

of an efficient national market into so many markets as to be virtually unmanageable, each with its own rules," making manufacturing "chaotic, terribly expensive, inefficient and very risky" because manufacturers would need to make separate product runs for each inconsistent regulation. *National Appliance Energy Conservation Act: Hearing on S.2781 Before the Subcomm. on Energy Regul. & Conservation of the Comm. on Energy & Nat. Res.*, 99th Cong. 68-69 (Sept. 16, 1986) (statement of Robert B. Gilbert, Officer, Air Conditioning & Refrigeration Inst.). Second, each individual standard would be "subject to change at any time," which would "create great unpredictability in the marketplace," *id.* at 108 (statement of Robert J. Bauer, Chairman, Gas Appliance Manufacturers Association). Finally, appliance sales in states with more stringent standards were being undercut by manufacturers in neighboring states because customers were crossing state lines to buy cheaper, though less efficient, appliances. *E.g.*, *id.* at 219 (statement of David A. Corcoran, President, American Supply Association) ("A Buffalo wholesaler had sales of hot water heaters drop by $40,000 in an 8-month period because he was noncompetitive with others who were selling below-standard hea[t]ers.").[2]

None of these concerns apply to the BEPS. The BEPS do not apply any requirements to products sold or used in the buildings they cover; for example, a manufacturer can sell exactly the same products under the BEPS in Montgomery County as it could in Howard County, D.C., or Virginia. Thus, the BEPS do not fragment the nationwide market established by federal appliance standards. The BEPS provide regulatory certainty over time, as well: unlike appliance

---

[2] Statements by participants in the drafting of a bill are relevant to statutory interpretation, even when the drafters are not legislators. *See, e.g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 202-03 & n.24 (1976) (finding an "explanation of [a bill provision] by a spokesman for its drafters…significant," despite the fact that the speaker was not a member of Congress).

standards, the EUI-reduction targets are known ahead of time, and even if they did change, those changes would not affect the types of products that manufacturers could supply to covered buildings. Finally, because the BEPS apply to buildings and not to appliances, the BEPS create no variance between the appliances available in different jurisdictions, and therefore no risk of undercutting sales in more stringent jurisdictions. In other words, implementation of the BEPS is not contrary to the purpose of NAECA, which is intended to standardize the regulation of appliance manufacturing, not the buildings in which appliances may be used.

###### B. *The Legislative Record Confirms that Congress Intended to Preempt Only Appliance Standards*

NAECA's exclusive focus on appliance standards is confirmed by the Senate and House committee reports for the Act. As the Senate report explains, the law is intended to prevent the problem of "separate State *appliance* standards," S. Rep. No. 100-6, at 4 (1987) (emphasis added), via a preemption provision that affects "State *appliance* efficiency regulations or requirements." *Id.* at 9 (emphasis added). Similarly, the regulatory impact evaluation for NAECA describes it as preempting "State *appliance* efficiency regulations." *Id.* at 13 (emphasis added). The House report likewise specifies that NAECA addresses "design requirements or minimum efficiency requirements *for appliances*," and preempts "State *appliance* efficiency regulations or requirements." H.R. Rep. No. 100-11, at 18, 37 (1987) (emphasis added).

Conversely, the legislative record provides no indication that Congress intended to preempt regulations like the BEPS that apply to buildings as a whole. Even the exemption for "building code[s] for new construction" at 42 U.S.C. § 6297(f)—the only reference to building-level regulations in EPCA's preemption language—exists because such codes "typically regulate the energy efficiency of *central heating and cooling equipment and water heaters*." *Id.* at 39

9

(emphasis added). In other words, Congress anticipated that appliance-specific regulations in building codes might be preempted, not whole-building regulations such as the BEPS.

### III. Extending EPCA Preemption to Cover the Building Energy Performance Standards would Eliminate Core State and Local Authorities

Plaintiffs' broad reading of EPCA preemption threatens traditional state and local authority. As an initial matter, extending the reasoning of the *Berkeley* case to the BEPS would constitute an attack on important County building regulations. But Plaintiffs go beyond that, asserting that, "[s]ince all EPCA-covered gas appliances increase the kBtu a building uses," any regulation of building energy use is also a regulation of those appliances' "energy use and energy efficiency." Compl. ¶ 66. In other words, Plaintiffs would have EPCA preempt the BEPS solely because it regulates a problem to which EPCA-covered appliances might contribute. This reasoning, if adopted, would threaten a broad swath of traditional state and local authorities, from electricity safety regulations to noise restrictions. *Cf.* Order at 9-10, *Rinnai America Corp.*, No. 24-cv-10482 (rejecting a reading of EPCA nearly identical to Plaintiffs' because, "if taken to its logical conclusion, this interpretation would upset the historic and recognized powers of states and local governments to…implement other regulations designed to protect the health and safety of their citizens"). Congress could not have intended this result, and Plaintiffs' interpretation is therefore incorrect. *See, e.g.*, *Dan's City Used Cars*, 569 U.S. at 264 (it is "hardly doubtful" that laws "peculiarly within the province of state and local legislative authorities" are not preempted by federal law, even when not specifically exempted (citation omitted)).

### A. Extending the Berkeley *Reasoning Would Threaten Important County Health and Safety Standards*

The animating idea behind *Berkeley*—that EPCA preempts state standards that would prevent the use of EPCA-covered appliances—when taken to its extreme, threatens to eliminate

states' ability to enforce basic health and safety standards. The federal government, recognizing

this danger, submitted a rare *amicus curiae* brief urging the Ninth Circuit to rehear the case

because the opinion "threaten[ed] a broad swath of State and local health and safety protections

by making EPCA preemption turn on unpredictable judicial intuitions." Br. for U.S. as Amicus

Curiae Supp. Pet. Reh'g 17, *Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), Dkt. No. 94.

   *Association of Contracting Plumbers* highlights some of the types of regulations in this

broad swath of threatened preemption. 2025 WL 843619, at *6. The Southern District of New

York's opinion points out that "[r]egulations prohibiting the use of certain types of fuels and

appliances in residential, commercial, and industrial settings are integral to municipal

construction and fire codes." *Id.* As an example, the opinion notes that New York City's

"prohibit[ion on] the installation of commercial cooking appliances in domestic dwelling units"

would apparently be preempted under this theory, "an absurd result that the Court must avoid."

*Id.* (citing *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007)); *see also, e.g.*, *Lynch

v. Jackson*, 853 F.3d 116, 122 (4th Cir. 2017) ("Readings of a statute that 'produce absurd results

are to be avoided.'" (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982))).

   The County's building code includes essentially the same prohibition on commercial

appliances in residential units as New York City's. 2021 Int'l Mech. Code § 917.2 ("Cooking

appliances installed within dwelling units…shall be listed and labeled as household-type

appliances for domestic use.").[3] Similarly, the County prohibits the indoor use of portable

---

[3] The County sets its own building codes, which are more stringent than those of the State of
Maryland. Specifically, it has adopted by reference the International Code Commission's 2021
International Mechanical Code and, as to new construction, the National Fire Protection
Association's 2021 Standards 1 and 101. COMCOR §§ 08.00.02.01, 22.00.07.04. Section 9.2.2

generators in most cases, 2021 Nat'l Fire Prot. Ass'n Standard (NFPA) 1 § 10.15.5; COMCOR §§ 22.00.07.27-29, and prevents potentially dangerous appliances from being used in certain types of buildings, *e.g.*, 2021 NFPA 1 § 11.5.1.10.2 (waste-oil burners prohibited in residential buildings); 2021 NFPA 54 § 10.21.3 (room heaters prohibited in healthcare and assisted-living facilities). Indeed, the County has the authority to stop the operation of *any* electrical appliance, "immediately and without notice," if it creates a safety threat or interferes with fire protection. Montgomery Cnty. Code § 17-9.

These sorts of basic safety regulations prevent the use of appliances in some circumstances, meaning that applying a broad view of the *Berkeley* interpretation of EPCA preemption would put them at risk. By the same token, safety regulations may "restrict[]" the use of appliances and "penaliz[e]" use contrary to the codes. *See, e.g.*, Montgomery Cnty. Code § 22-22 (providing for penalties for violation of fire-code standards). Plaintiffs' argument, therefore, threatens to eliminate these commonsense safety regulations. This could not have been the intent of Congress, as indicated by both the statutory text a committee report for the amendments that inserted the current preemption language, which specifically uses "fire, heating or safety standards" as examples of state regulations that the new language would *not* preempt. H.R. Rep. No. 100-11, at 24 (1987). The fact that they could be preempted under Plaintiffs' reading, therefore, demonstrates that Plaintiffs' interpretation is incorrect.

---

of the National Fire Protection Association's Standard 101, in turn, incorporates the organization's Standard 54 as regards heating equipment. The 2021 International Mechanical Code is available at https://codes.iccsafe.org/content/IMC2021V1.0 and the National Fire Protection Association's 2021 Standards 1, 54, and 101 are available at https://link.nfpa.org/free-access/publications/1/2021, https://link.nfpa.org/free-access/publications/54/2021, and https://link.nfpa.org/free-access/publications/101/2021, respectively.

*B. Plaintiffs' Logic Goes beyond* Berkeley, *Threatening Other Regulatory Authorities*

Even the *Berkeley* interpretation of EPCA preemption, broad at is, would not suffice for Plaintiffs' case. *See supra* § I.B. Plaintiffs therefore stretch EPCA preemption even further, alleging that EPCA preempts regulations merely for regulating a metric to which EPCA-covered appliances might contribute. *E.g.*, Compl. ¶ 29 ("Since all EPCA-covered gas appliances increase the kBtu a building uses, the Montgomery County BEPS are regulating their energy use and energy efficiency by imposing declining kBtu per gross floor area requirements…."). Adopting this broad approach to EPCA preemption could wipe out key areas of local authority— any regulation on anything that "EPCA-covered gas appliances increase." The Center sketches a few examples here to illustrate the unreasonableness of the interpretation.

First, Plaintiffs' theory of EPCA preemption would preempt any regulation of energy loads, an important feature in the County's electrical safety code. For example, the County limits the amount of electrical load on a given branch circuit. *See generally* 2017 NFPA 70 § 210.23.[4] If an occupant wants to add additional electrical appliances beyond that load, they must install a new branch circuit or upgrade the existing circuits (which can entail moving existing appliances onto a lower-rated circuit). *Id.* This means that any new electrical appliance an occupant wishes to use is subject to a collective upper limit on electric load—restricting the use of EPCA-covered electric appliances in the same manner as the BEPS restricts the use of EPCA-covered appliances by limiting overall building use. Similarly, the County restricts the number of outlets on each branch circuit, thereby constraining the total number of certain electrical appliances. COMCOR § 17.02.01.08. If Plaintiffs are correct that imposing a regulatory cap on the overall use of

_____

[4] The County has adopted the 2017 NFPA 70 by reference. COMCOR § 17.02.01.02.

13

appliances "concerns" the "energy use" of individual EPCA-covered appliances that can be installed, then the County's electrical-safety code must also be preempted.

Similarly, the County restricts the maximum amount of noise that can be produced at a building. Montgomery Cnty. Code § 31B-5.[5] Many noisy appliances—such as air conditioners, fans, or televisions—are covered by EPCA. *E.g.*, 42 U.S.C. §§ 6292(a)(2)-(3), (12), 6313(a); *Energy Conservation Program: Final Determination of Fans and Blowers as Covered Equipment*, 86 Fed. Reg. 46579 (Aug. 19, 2021). Since noise is cumulative, the County's noise regulations effectively place an upper limit on the operation of appliances, including EPCA-covered appliances, after which a building owner must install costly additional soundproofing or relocate the appliances. Therefore, these regulations restrict the operation of EPCA-covered appliances in the same manner as the BEPS: they impose a numeric restraint on the necessary consequence of using appliances, without referencing the appliances themselves.

The same considerations apply to light regulations, which the County imposes through zoning restrictions. Montgomery Cnty. Zoning Ord. § 6.4.4(D) (generally requiring illumination to be no more than 0.5 foot-candles of illumination at the lot line). Various types of lighting appliances are covered by EPCA. 42 U.S.C. § 6292(a)(13)-(14), (19); 10 C.F.R. § 431.2 (definition of "covered equipment"). As with circuit load, noise, and the BEPS themselves, the use of these EPCA-covered appliances will necessarily count against a collective cap, in this case a maximum amount of illumination at the lot line. Indeed, the County's lighting regulations are even more stringent, since there is no generally available alternative compliance option such as the onsite-renewables option under the BEPS. If the BEPS "concern[]" the energy efficiency or

---

[5] The County may impose noise standards that exceed the state's. Md. Laws Env't § 3-105.

use of appliances inside of covered buildings, then the County's lighting restrictions must equally concern the energy efficiency or use of lighting appliances.

Plaintiffs' reading—that EPCA preempts regulation of any concern to which the use of an EPCA-covered appliance contributes—would threaten these longstanding health, safety, and land-use regulations, and no doubt many more. This sweeping effect on local authority is irreconcilable with the intent of Congress, as evidenced in EPCA's language and in the legislative record. The correct interpretation of EPCA necessitates a less expansive reading of the statute's text; as discussed *supra*, § I.B, the interpretation of "concerning" used by the Southern District of New York gives full meaning to EPCA's preemption provision while avoiding preemption of important regulations, like the County's electrical, noise, and light controls, that do not "reference" or "focus[ ] on" covered appliances' energy efficiency or use or "draw any distinction between products based on their energy efficiency or energy use as manufactured." *Association of Contracting Plumbers*, 2025 WL 843619, at \*5-6.

## Conclusion

The Center urges the Court to reject Plaintiffs' reading of EPCA and dismiss this case.


Dated: July 21, 2025                                    Respectfully submitted,

_____/s/_____                    _____/s/_____
Jill E. Grant (bar #30492)                          Daniel Carpenter-Gold (*pro hac vice* filed)
Jill Grant & Associates, LLC                       Mia Montoya Hammersley
1319 F Street NW, Suite 300                       Public Health Law Center
Washington, DC 20004                              Mitchell Hamline School of Law
jgrant@jillgrantlaw.com                             875 Summit Ave.
(202) 821-1950                                        St. Paul, MN 55105
                                                            daniel.carpentergold@mitchellhamline.edu
                                                            (651) 290-6329

                                                            *Counsel for the Public Health Law Center*

15